UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN DOE NO. 1, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-22-089-G |
| | ) |
| KINGFISHER INDEPENDENT SCHOOL DISTRICT NO. 7 OF KINGFISHER COUNTY, OKLAHOMA, a/k/a KINGFISHER SCHOOL DISTRICT, a/k/a KINGFISHER PUBLIC SCHOOLS et al., | ) ) ) ) ) ) ) ) |
| | ) |
|    Defendants. | ) |

**ORDER**

Now before the Court is a Motion for Protective Order (Doc. No. 22), filed by Defendants Kingfisher Independent School District No. 7 of Kingfisher County ("School District"), Blake Eaton, Jeff Myers, Derek Patterson, and Micah Nall. Plaintiff John Doe No. 1 has submitted his Response (Doc. No. 32), and Defendants have filed a Reply (Doc. No. 35). Having considered the parties' briefing, the Court denies Defendants' Motion.

    *I.*     *Background*

Plaintiff initiated this lawsuit in the District Court of Kingfisher County, Oklahoma, and filed the operative pleading in this action, the First Amended Petition, on January 12, 2022. *See* First Am. Pet. (Doc. No. 1-4). This action was then removed to federal court on January 31, 2022. *See* Notice of Removal (Doc. No. 1). Plaintiff's First Amended Petition alleges that Defendants maintained an abusive culture within the Kingfisher

Highschool Football program and states claims for violation of 42 U.S.C § 1983, violation of Title IX of the Education Amendments Act of 1972, gross negligence under Oklahoma Common Law, and intentional infliction of emotional distress under Oklahoma Common Law.  *See* First Am. Pet. at ¶¶73-144.

In the early months of federal litigation, this action received media attention.  *See, e.g.*, Defs.' Mot. Exs. 1, 2, 3 (Doc. Nos. 22-1, 22-2, 22-3).  Additionally, Plaintiff's counsel, Cameron Spradling, made public comments regarding this action to news outlets and through his personal Twitter account.  *See* Defs.' Mot. Exs. 8, 18, 19 (Doc. Nos. 22-8, 22-18, 22-19).  Defendants allege that due to this publicity they have received negative messages and comments from members of the public via telephone, email, and social media.  *See* Defs.' Mot. Exs. 22, 23, 24 (Doc. Nos. 22-22, 22-23, 22-24).  Defendants now request that the Court enter an order restricting Mr. Spradling's ability to engage in extrajudicial commentary regarding this action.  *See* Defs.' Mot. at 28.

        II.     Applicable Standards

An order restricting extrajudicial commentary on a pending case, also known as a "gag order," imposes a prior restraint on the right to freedom of speech guaranteed by the First and Fourteenth Amendments.  *See Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 556 (1976); *GWACS Armory, LLC v. KE Arms, LLC*, No. CIV-20-00341, 2022 WL 17547783, at *4 (N.D. Okla. Dec. 9, 2022).  "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n*, 427 U.S. at 559.  "A party seeking to impose a gag order on any trial participant must show that there is a 'reasonable likelihood' that media attention or extrajudicial commentary will

2

prejudice a fair trial." *Pfahler v. Swimm*, No. CIV-07-01885-M, 2008 WL 323244, at *1 (D. Colo. Feb. 4, 2008) (quoting *United States v. Tijerina*, 412 F.2d 661, 666 (10th Cir. 1969)).[1] In determining whether a reasonable likelihood of prejudice exists, and whether an order restraining speech is justified, a court should consider: "(a) the nature and extent of pretrial news coverage; (b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (c) how effectively a restraining order would operate to prevent the threatened danger." *Neb. Press Ass'n*, 427 U.S. at 562.

III.    *Discussion*

Defendants request that the Court order that Mr. Spradling be prohibited from commenting on any on the following:

1. Any statements relating to the character, credibility, reputation, arrests, or criminal record of a party or witness to this litigation;
2. Any statements accusing any Defendants of committing a criminal offense;
3. Any statements about what any trial of this matter will reveal about the Defendants before any such trial occurs;
4. Any statements as to insurance coverage availability or settlement negotiations; and

---

[1] At least one district court in the Tenth Circuit has held that in order "to meet constitutional muster, any so-called gag order barring extrajudicial statements must be justified by a substantial likelihood of material prejudice to the judicial proceeding" following the United States Supreme Court's decision in *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991). *Stinnett v. Reg'l Transportation Dist.*, 477 F. Supp. 3d 1187, 1191 (D. Colo. 2020). Because this substantial likelihood standard has not yet been extended by a higher court to motions for a gag order, this Court will apply the "reasonable likelihood" standard articulated by the Tenth Circuit in *United States v. Tijerina*, 412 F.2d 661 (10th Cir. 1969). *See, e.g.*, *Pfahler*, 2008 WL 323244, at *1 (applying the reasonable likelihood standard); *Slivka v. Young Men's Christian Ass'n of Pikes Peak Region*, 390 F. Supp. 3d 1283, 1286 (D. Colo. 2019) (same); *GWACS Armory, LLC*, 2022 WL 17547783, at *4 (same).

> 5. Showing or putting on social media any videos or pictures related to the allegations unless such materials are publicly filed.

Defs.' Mot. at 28. Defendants argue that Mr. Spradling's commentary regarding this case violates Rule 3.6 of the Oklahoma Rules of Professional Conduct and creates an imminent and materially prejudicial effect on a future trial because Mr. Spradling's commentary references the School District's rejection of a settlement offer, attacks the character and credibility of Defendant Myers, praises the entities investigating the allegations, and elicits media attention. *See* Defs.' Mot. at 24-26. Defendants also contend that the media attention this case has received has resulted in Defendants receiving threats from members of the public and has contaminated the jury pool. *See id.* at 26.

Plaintiff opposes the Defendants' request, arguing that Defendants have not demonstrated a reasonable likelihood that Mr. Spradling's comments will compromise a fair trial. *See* Pl.'s Resp. at 21. Further, Plaintiff contends that there has been critical commentary from the media and public regarding his client and that Rule 3.6(b) of the Oklahoma Rules of Professional Conduct allows him to respond to and attempt to ameliorate publicity adverse to his client. *See id.* at 20-21.

Rules 3.6 (a) and (b) of the Oklahoma Rules of Professional Conduct, which address trial publicity, provide:

> (a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable lawyer would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have an imminent and materially prejudicial effect on the fact-finding

>process in an adjudicatory proceeding relating to the matter and involving lay fact-finders or the possibility of incarceration.
>
>(b) Notwithstanding paragraph (a), a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client.  A statement made pursuant to this paragraph shall be limited to such information as is necessary to mitigate the recent adverse publicity.

Okla. Stat. tit. 5, app. 3-A, § Rule 3.6.  The Oklahoma Rules of Professional Conduct are the standard governing attorney conduct in this Court.  *See* LCvR 83.6(b).  The Court has reviewed Mr. Spradling's public comments regarding this action that were provided as exhibits to Plaintiff's Motion.  Many of Mr. Spradling's comments reference allegations included in the First Amended Petition, praise his client's willingness to come forward with the allegations, or express Plaintiff Counsel's position on matters relating to this action that are publicly known, such as the State's investigation into the allegations and the School Board's rejection of Plaintiff's settlement offer.

But as Defendants argue, some of Mr. Spradling's tweets, specifically those tweets regarding Defendant Myers' character, push the limits of public commentary by counsel allowable under Rule 3.6.  *See* Defs.' Mot. at 25; Okla. Stat. tit. 5, app. 3-A, § Rule 3.6 (committee comment 5(1)) (noting that public comments on certain subjects, such as a party's character, credibility, reputation, or criminal record, may be more likely to result in a materially prejudicial effect on a proceeding than others).  But even assuming that Mr. Spradling's comments rise to the level of a violation of Rule 3.6(a), Defendants have not

supplied authority supporting that the appropriate penalty for a violation of Rule 3.6 is a gag order.

Considering the factors articulated in *Nebraska Press Association*, the Court concludes that Mr. Spradling's public commentary does not warrant the imposition of "the most serious and the least tolerable infringement on First Amendment rights." 427 U.S. at 559. First, no party disputes that this case received attention from local and statewide media outlets, particularly in the first few months following removal to federal court. Defendants have not, however, submitted evidence supporting that coverage of this lawsuit has been so pervasive and one-sided that it has tainted the entire jury pool for the Western District of Oklahoma. Further, as Plaintiff argues, Mr. Spradling's commentary via his personal Twitter account does not appear to be as wide reaching as Defendants imply. *See* Defs.' Mot. Exs. 20, 21 (reflecting that Mr. Spradling's tweets regarding this action received approximately 10 "likes" or "retweets"). At this point, then, the Court concludes that any media attention that this action has received is "not so great that a fair trial cannot be obtained." *Pfahler*, 2008 WL 323244, at *2.

Second, mitigating measures not involving a gag order exist that would negate any prejudice caused by media coverage or counsel's public commentary regarding this action. *See United States v. Walker*, 890 F. Supp. 954, 957 (D. Kan. 1995) ("Less restrictive alternatives to an injunction against speech include such possibilities as a change of venue, trial postponement, a searching voir dire, emphatic jury instructions, and sequestration of jurors."). Defendants argue that alternatives to a gag order will likely be ineffectual, as such alternatives will not stop the media attention or Mr. Spradling's tweeting and public

6

commentary.  *See* Defs.' Mot. at 27.  Defendants, however, do not seek a gag order against the media, just Mr. Spradling.  Further, Defendants have not explained how voir dire would be ineffectual in eliminating a potential juror whose view of the matter has been tainted by pretrial publicity.  And Defendants have not addressed the potential mitigating effect of instructions to the jury regarding pretrial publicity, which the jury would presumably follow.  *See Weeks v. Angelone*, 528 U.S. 225, 226 (2000) (noting that it is presumed that the jury understands and follows instructions from the court).

Finally, Defendants have not adequately shown that a gag order would be effective in preventing any prejudice to a fair trial.  While the Defendants' requested gag order would limit Mr. Spradling's pretrial commentary, it would not stop media coverage or discourse on social media by members of the public regarding this action.

In sum, the Court finds that Defendants have not demonstrated a reasonable likelihood that Mr. Spradling's extrajudicial commentary will prejudice a fair trial for Defendants.  Finding that the extreme relief requested is not warranted at this stage, the Court declines to impose that relief.

## CONCLUSION

For the reasons explained above, Defendants' Motion for Protective Order (Doc. No. 22) is DENIED.

IT IS SO ORDERED this 11th day of May, 2023.

*[signature]*
CHARLES B. GOODWIN
United States District Judge