IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

(1) JOHN DOE NO. 1,                          )
                                             )
      Plaintiff,                       )
                                             )
v.                                           )          Case No. CIV-22-089-G
                                             )
(1) KINGFISHER INDEPENDENT                   )
    SCHOOL DISTRICT NO. 7 OF                 )
    KINGFISHER COUNTY,                       )
    OKLAHOMA, a/k/a KINGFISHER               )
    SCHOOL DISTRICT, a/k/a                   )
    KINGFISHER PUBLIC SCHOOLS;               )
                                             )
(2) JEFF MYERS, individually;                )
                                             )
(3) MICAH NALL, individually;                )
                                             )
(4) DEREK PATTERSON, individually;           )
    and                                      )
                                             )
(5) BLAKE EATON, individually,               )
                                             )
      Defendants.                      )

DEFENDANT MICAH NALL'S BRIEF IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>

Respectfully Submitted,

Mark S. Rains, OBA No. 10935
ROSENSTEIN, FIST & RINGOLD
525 South Main, Suite 700
Tulsa, OK 74103
(918) 585-9211 Phone
(918) 583-5617 Facsimile
mrains@rfrlaw.com
ATTORNEY FOR DEFENDANT MICAH NALL

August 30, 2023

**TABLE OF CONTENTS**

**DEFENDANT MICAH NALL'S SUMMARY JUDGMENT BRIEF**

Introduction ................................................................................................ 1

Undisputed Facts ........................................................................................ 2

Legal Arguments and Authorities .............................................................. 13

Proposition 1 .............................................................................................. 13

    Coach Nall Did Not Affirmatively, Knowingly or in Reckless Disregard of a Known Risk Create an Immediate Danger to Mason, Nor Was Coach Nall's Conduct Under the Circumstances Conscious Shocking and Therefore Mason's State Created Danger-Substantive Due Process Claim Fails as a Matter of Law ................................................................................................ 13

    A.    Section 1983 Individual Liability Requirements and Acting Under Color of Law ........................................................................ 13

    B.    Mason Cannot Satisfy the Six Part Test Needed to Establish A "State Created Danger" Individual Liability Claim Against Coach Nall .................................................................................... 14

    C.    Coach Nall Was Not Aware of Any Dangers to Mason, Did Not Affirmative Place Mason in Obvious, Known Dangers, Increase His Vulnerability to Them or Act with Deliberate Indifference or Reckless Disregard and Therefore is Not Liable on a State Created Danger Claim .................................................. 15

    D.    The Case, And Coach Nall's Personal Interactions with Mason, Do Not Shock the Conscious Entitling Coach Nall to Summary Judgment ...................................................................................... 20

Proposition 2 .............................................................................................. 23

    Coach Nall Did Not Intentionally Discriminate Against Mason on the Basis of Sex, Nor Was he Deliberately Indifferent to Mason's Equal Protection Rights and is Therefore Entitled to Summary Judgment ...................................... 23

Proposition 3 .............................................................................................. 24

    Since Coach Nall Did Not Violate Mason's Clearly Established Constitutional Rights and Therefore He is Qualifiedly Immune From Suit ......... 24

i

Proposition 4..................................................................................................27

    Mecklenburg's Claim for Intentional Infliction of Emotional Distress Fails as a
    Matter of Law.............................................................................................27

Proposition 5 ................................................................................................31

    Coach Nall Acting in Good Faith Within the Course and Scope of His
    Employment Cannot Be Liable for Negligence Under Oklahoma Law..............31

Conclusion....................................................................................................34

Signature of Counsel ......................................................................................34

Certificate of Delivery......................................................................................35

# TABLE OF AUTHORITIES

**Cases**

*A.M. v. Holmes,* 830 F.3d 1123 (10th Cir. 2016) ................................................. 24

*Abeyta By and Through Martinez v. Chama Valley Independent School District No. 19,* 77 F.3d 1253 (10th Cir. 1996) ....................................................... 21

*Anderson v. Creighton,* 483 U.S. 635 (1987) ................................................. 25

*Blum v. Yaretsky,* 457 U.S. 991 (1982) ......................................................... 13

*Breeden v. League Services Corp.,* 1978 OK 27, 575 P.2d 1374 ............................. 28, 29

*Brooks v. Gaenzle,* 614 F.3d 1213 (10th Cir. 2010).......................................... 24

*Brown v Montoya,* 662 F.3d 1152 (10th Cir. 2011).......................................... 25

*Christensen v. City of Tulsa,* 32 F.3d 1270 (10th Cir. 2003) .............................. 17

*Cohlmia v. Ardent Health Servs., LLC,* 448 F. Supp. 2d 1253 (N.D. Okla. 2006)..... 27, 30

*Computer Publications, Inc. v. Welton,* 2002 OK 50, 49 P.3d 732 ........................... 28

*Cooper v. Millwood Indep. School Dist. No. 37,* 1994 OK CIV APP 114, 887 P.2d 1370 ..................................................................................... 32, 33

*County of Sacramento v. Lewis,* 523 U.S. 833 (1998) ................................. 20, 21

*Currier v. Doran,* 242 F.3d 905 (10th Cir. 2001) ....................................... 15

*Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379 (10th Cir. 1991)........ 28, 29, 30, 31

*Darr v. Town of Telluride,* 495 F.3d 1243 (10th Cir. 2007) ............................... 14

*Davidson v. Cannon,* 474 U.S. 344 (1986) ............................................... 15

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,* 489 U.S. 189.......................... 13, 14

*Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211 (5th Cir. 1998) ......................... 24

*Doe v. Woodard,* 912 F.3d 1278 (10th Cir. 2019) ........................................ 20

*Eddy v. Brown,* 1986 OK 3, 715 P.2d 74 ................................................... 28

*Gaylord Entertainment Co. v. Thompson,* 1998 OK 30, 958 P.2d 128 ................... 27, 29

*Hannula v. City of Lakewood,* 907 F.2d 129 (10th Cir. 1990).......................... 26

*Haynes v. South Community Hosp. Management, Inc.,* 1990 OK CIV APP 40, 793 P.2d 303.............................................................................................. 28

*Hovater v. Robinson,* 1 F.3d 1063 (10th Cir. 1993)..................................... 23

*Hunter v. Bryant,* 502 U.S. 224, 112 S. Ct 532, 116 L.Ed.2d 589 (1991) ............... 24

*J.S. v. Harris,* 2009 OK CIV APP 92, 227 P.3d 1089 .................................... 32

*Koessel v. Sublette Cnty. Sheriff's Dep't.,* 717 F.3d 736 .............................. 21

*Kolstad v. American Dental Ass'n,* 527 U.S. 526 (1999)................................. 23

*L.H. v. Pittson Area Sch. Dist.,* 666 Fed. App'x 213 (3d Cir. 2016)................... 21

*Lowery v. Echostar Satellite Corp.,* 2007 OK 38, ¶12, 160 P.3d 959 ................... 32

*Matlock v. Texas Life Ins. Co.,* 404 F. Supp. 2d 1307 (W.D. Okla. 2005) .............. 30

*Matthews v. Bergdorf,* 889 F.3d 1136 (10th Cir. 2018).................................. 25

*Mick v. Brewer,* 76 F.3d 1127 (10th Cir. 1996) ......................................... 25

*Miller v. Miller*, 1998 OK 24, ¶ 33, 956 P.2d 887 ................................................................ 28

*Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996) ............................................................ 13

*Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238 (10th Cir. 1999) .......................................... 23, 25

*Muskrat v. Deer Creek Public Schools*, 715 F.3d 779 (10th Cir. 2012) ............................ 26

*Pahls v. Thomas*, 718 F.3d 1210 (10th Cir. 2013) .............................................................. 24

*Porter v. Ponca City Independent School District No 1-71*, No. Civ-21-612-PRW, 2022
    WL 1444471 at *2-3 (W.D. Okla. May 6, 2022) .......................................................... 33

*Ruiz v. McDonnell,* 299 F.3d 1173 (10th Cir. 2002) .......................................................... 15

*Saucier v. Katz*, 533 U.S. 194 (2001) .............................................................................. 25, 26

*Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ....................... 25

*Speight v. Presley*, 2008 OK 99, 203 P.2d 173 .................................................................. 33

*Sutton v. Utah State School for Deaf and Blind*, 173 F.3d 1226 ...................................... 15

*Tonkovich v. Kansas Board of Regents,* 159 F3d 514 (10th Cir. 1998) ............................ 24

*Uhlrig v. Harder*, 64 F.3d 567 (10th Cir. 1995) ............................................................... 21

*Williams v. Lee Way Motor Freight, Inc.*, 1984 OK 64, 688 P.2d 1294 ........................... 28

*Zeran v. Diamond Broad., Inc.*, 203 F.3d 714 (10th Cir. 2000) ................................. 29, 31

**Statutes**

42 U.S.C. § 1983 ............................................................................... 13, 14, 23, 24

Okla. Stat. tit. 51, § 153(A) ............................................................................... 33

Okla. Stat. tit. 51, 163(C) ............................................................................... 33

## DEFENDANT MICAH NALL'S SUMMARY JUDGMENT BRIEF

## INTRODUCTION

Former Kingfisher High School football player Mason Mecklenburg ("Mecklenburg") contends that during his first two years on the team that he was the victim of a random sexual assault perpetrated by other football players and was whipped and beaten with weaponized towels in the team's locker room outside the presence of any coaches. Mason also contends that he suffered other physical and verbal abuses. Former Kingfisher Assistant High School football coach, Defendant Micah Nall ("Nall" or "Coach Nall") now sued by Mason, never received any complaints from any source that Mason's safety or well-being were at risk. Coach Nall had no knowledge that a random criminal sexual assault and beatings were either imminent or were actually occurring and therefore was unaware of a need to intercede. Coach Nall neither physically nor sexually abused Mason and Mason admits that his chief complaint against Coach Nall was Nall's vulgarity and cussing directed to Mason, during, and only during football practices.

Coach Nall neither willfully ignored nor condoned any attack on Mason. That attacks and abuse Mason sues over, those "risks" were neither affirmatively created by Coach Nall nor obvious and known to him.  Thus, Coach Nall never violated with deliberate indifference, reckless disregard or otherwise, any of Mason's federally protected rights.  Based on "qualified immunity" all federal claims against Coach Nall should be dismissed.

Additionally, Coach Nall's personal, non-physical, verbal interactions with Mason, as a matter of law, neither rose to the level of a state created danger or a sexual harassment

1

violation, nor an intentional infliction of emotional distress that caused severe mental anguish.

Finally, as a school district employee acting in good faith and within the course and scope of his employment, Coach Nall is also immune from suit on the negligence claim asserted by Mason. Accordingly, summary judgment should be entered against Mason on all claims. Coach Nall's motion for summary judgment is supported by the following undisputed material facts, legal arguments and legal authorities.

## UNDISPUTED FACTS

In accordance with Federal Rule of Civil Procedure Rule 56 and Local District Court Rule 56.1, the following undisputed facts ["UDF's"] support summary judgment for Nall:

1.      Coach Nall has been a professional educator for almost 25 years and a football coach for over 21 years. Although a high school teacher at KPS, Nall never had Mason as a student in his class. Coach Nall went to work as an assistant high school football coach for Kingfisher Public Schools ("KPS") in 2013 under head coach Jeff Myers ("Myers" or "Coach Myers"). Coach Nall was on the KPS coaching staff until late August of 2020. After completing his KPS teaching contract in May of 2021 Nall went to work for Westerns Heights Public Schools in the summer of 2021. [Deposition of Micah Nall, Exhibit 1 to this brief (hereafter "Nall Depo") at P279 L23 to P280 L1, P32 L2-L6; P165 L21-L23; P21 L6-L11; P170 L10 to P171 L4; P221 L8-L16, P330 L5 to P331 L1].

2.      Between his freshman year in 2017, and when he graduated as a senior in May of 2021, Mason played high school football for KPS as a running back and on defense.

2

Assistant coaches Blake Eaton, Derek Patterson and Stan Blundell were Mason's principal "position" coaches for his four years at KPS. Coach Nall was not a position coach for Mason. Instead, Coach Nall coached the offensive line and was the offensive coordinator for the football program. [Deposition of Mason Mecklenburg, Exhibit No. 2 to this Brief (hereafter "Mason Depo") at P10 L10 to P11 L20, P36 L17-21; Nall Depo at P340 L20-L25].

3.     During Mason's time on the team, the practice routine was that the players would head to the football team's locker room, change into practice clothes, and then head out to the fields for stretching and warmups. The players would then break into their specific position groups for more individualized instruction. Part of the practices sessions also involved "team" or "scout team" sessions on Mondays, Tuesdays and Wednesdays that included all the freshmen. [Mason Depo at P339 L23 to P340 L13; P342 L23 to P343 L11; P343 L17-L23].

4.     During Mason's four years in the program, Coach Nall was late getting to the start of practices because Coach Nall taught a sixth hour class which required, after class was over, that he walk to this car, drive to the football facilities and then enter the fieldhouse. By the time he got to locker room the players were already heading out to the practice fields. Supervision of the locker room at the beginning of practice was not one of Coach Nall's daily duties in the football program. [Nall Depo at P188 L21 to P189 L13; P245 L16-L25].

5.     Practices typically lasted around two hours and immediately *after* daily practice activities on the field and when the players went to shower, Coach Nall would

retrieve taped footage of the practice (captured by a drone) and would upload that footage in the coaches' offices and therefore Coach Nall daily duties after practice on the field ended did not include supervision of the locker room.  This post-practice routine was consistent for Nall during Mason's entire football career at KPS. [Nall Depo at P 246, L1 to P247 L10].

6.    Mason *alleges* that he was physically abused, sexually assaulted and verbally abused as a member of the KPS football team, primarily during his freshman and sophomore years and that after his sophomore year he experienced no more physical abuse and the alleged verbal abuse from teammates ended. [See generally Mason's Second Amended Complaint, Docket No. 96 (hereafter "Complaint") as disputed in Nall's Answer to Mason's First Amended Complaint (Docket No. 9) which this Court allowed to stand against the Complaint; Mason Depo at P210 L16 to P211 L9].

7.    Coach Nall never physically abused Mason. [Mason Depo at P338 L23 to P339 L17].

8.    Coach Nall never sexually assaulted or sexually abused Mason. [Mason Depo at P338 L23 to P339 L17].

9.    [Vulgar Language and Cussing].  As a further basis for his claims, Mason alleges and asserts that Coach Nall was verbally abusive to him as a player based on vulgar language Nall used during football practices. As Mason described it, Coach Nall was "just vulgar everywhere *across the board*" and by vulgar, Mason meant that Coach Nall was cussing.  In this regard, Nall's use of profanity was, according to Mason, consistent over

Mason's freshman, sophomore and junior years. [Mason Depo at P385 L9-L18, P64 L12-L22; P344 L1-L9, P93 L3-L8, P101 L17-L22, emphasis added].

10.     When asked to provide examples of the vulgarity, Mason described that Coach Nall called him out Mason for a "pussy tackle," called Mason a "pussy," words to the effect that Mason was a pussy for going down like that on the field or telling Mason on the practice field to "stop being a pussy." [Mason Depo at P344 L25 to P345 L19; P347 L3-25; P74 L1-15]. Mason, as a freshman, called his fellow students "pussies." [Mason Depo. P58, L9-13].

11.     As another example of the vulgarity, Mason related that after he had been blocked by another player on the field, Coach Nall said:  That's why your Number 22's little bitch is because you're soft and you're not get any stronger and you're constantly letting him bitch you around and stuff and you're going to continue to hap -- it's going to continue to happen to other teams if you don't, you know, work on your game or get better or something or another time Mason asserts that Nall called him "little bitch boy"  at practice. [Mason Depo at P346 L5-L14; P345 L11-L18].

12.     Mason also asserts that Coach Nall dropped the "F-Bomb" or other cuss words in every other sentence utter at practice.  While Coach Nall admits that cussing on the field was a problem for him, Mason was not surprised that the "F" word was used in a football setting and admits that he used the word himself. [Mason Depo at P348 L16-L24; Nall Depo at P109 L9-11].

13.     [Sexual Assault/Tea-Bagged].  As a further basis for his claims, Mason asserts and alleges that in his sophomore year he was sexually assaulted when football

5

players held him down and another football player, naked, sat on his face and put his genitals and anus on Mason's face (hereafter "Tea-bagging" or "Tea-bagged"). [Complaint at ¶ 63].

14.     Before he was grabbed in the assault, Mason had no advanced notice that the Tea-bagging was going to take place. According to Mason, the Tea-bagging was "very random," something that he had never seen before and something that never happened again. [Mason Depo at P258 L18 to P259 L2; P265 L21-24; P242 L15-L20].

15.     Coach Nall was not in the locker room and did not see Mason getting Tea-bagged. Before it happened, Nall was not aware of any Tea-bagging incidents occurring within the football program and Mason never reported the assault, even to his own parents until he after he graduated high school. [Mason Depo at P239 L19 to P240 L5, P242 L3-L14; P257 L16-L22; Nall Depo at P139 L23 to L140 L18, P266 L16-L19].

16.     [Towel Whippings/Beatings in the Shower].  As a basis for his claims, Mason also alleges and asserts that he was whipped with wet towels while naked in the locker room showers, causing him significant bruising and injuries. [Complaint at ¶s 35-36; Mason Depo at P46 L17 to P47 L9; P149 L12 to P150 L11].

17.     Coach Nall never saw and was not aware that players were wrapping up balls in towels and whipping Mason. Coach Nall never saw anyone get whipped and beat to the point that it caused the bruises and injuries like those shown in the photo set out in the Complaint (page 13) and Coach Nall never saw towels turned into weapons. [Nall Depo at P178 L22 to P180 L7; P184 L18-L22; P187 L1 to P188 L2; P252 L8-L11].

18.     [Towel Pop].  Although aware of teenage horseplay and players "popping" each other with a towel in the locker room no one ever reported to Coach Nall that Mason had been whipped and beaten in the showers or elsewhere to the point of the injuries shown in the photograph exhibited in the Complaint. Mason never reported the beatings to school officials or the police. Coach Nall had no advanced knowledge of anyone going to whip and beat Mason in the shower to the point that he would receive the injuries shown in that photograph. At best, Mason speculates that Coach Nall was present when he received single pop of a dry to the towel to the thigh and concedes the "pops" were done outside the presence of the coaches. [Nall Depo at P253 L1-L11-14; Mason Depo at P139, L12-L16; P154 L5-7, P361 L10 to P362 L3].

19.     [Tasers].  As a further basis for his claims, Mason asserts and alleges that he was tased in the locker room by other football players, maybe three or four times after practice when no coaches, administrators or faculty were around. Mason also contends that players would come up behind him and activate the taser causing him to jump and run away and he believes this was done when no coaches were present. Mason never reported these events to staff. [Mason Depo at P54 L13-L16; P116 L1-L22 to P117 L2, P118 L25 to P120 L13].

20.     Coach Nall was never aware that tasers were being used by players on Mason in the locker room, never saw a taser being used on Mason and had no advance notice or knowledge that a taser might be used on Mason.  [Nall Depo at P190 L24 to L9; P254 L15-L18].

21.     [Pellet Gun].  As further basis for his claims, Mason alleges and asserts that in 2018 football players brought a pellet gun into the football locker room and shot it off causing pellets to fly everywhere (grazing Mason in the process) and scattering the players out of the locker room. [Mason Depo at P196 L5 to P198 L3].  Coach Nall had no advanced notice or knowledge of any incident involving Mason and a pellet gun. [Nall Depo at P254 L23 to P255 L2].

22.     [Paintball Gun]  As a further basis for his claims, Mason contends and alleges that he was shot off campus by a football player with a paintball gun while on a date when no adults were around, was shot several other times at practice as a freshman, had clothes ruined in the locker room by a paintball gun and was shot at from the truck of a bed by a football player while coming onto the practice field.   Coach Nall never saw anyone use a paintball gun on Mason and had no advanced notice that Mason might get shot with a paintball gun. [Mason Depo at P114 L10-L16, P 124 L 14 to P 125 L10, P128 L6-25, P359 L11-16; Nall Depo at P254 L19-L22, P192 L13 to P193 L3].

23.     [Urine in the Helmet].  As further basis for his claims, Mason alleges and asserts that football players one time froze water in his helmet and one time froze urine in his helmet, incidents done outside the presence of coaches. Mason did not go to Coaches Patterson, Myers or Eaton to complain about these events. Nall was not aware of the incident until he heard players talking about it, never saw any urine melting on any player's face and assumed that since the ruined helmet was replaced that Head Coach Jeff Myers was handling the situation.   [Mason Depo at P192 L2 to P195 L14, P362, L11-L22; Nall Depo at P196 L12 to P198 L1, P198 L2-L5].

24.    [Blindside Hits].  As a further basis for his claims, Mason contends and alleges that while at practice, players would hit players on their blindside who were just standing around, with Mason speculating that unspecified coaches witnessed it. [Mason Depo at P48 L24 to P49 L2, P54 L9-13].

25.    Coach Nall was generally aware that blindside hits happened at times but not daily and not necessarily at "full speed," but only because he saw it across the field from where he was out of the corner of his eye.  Coach Nall did not allow blindside hits in his position group and had no advanced personal knowledge that Mason was going to be target and only assumes that he was. [Nall Depo at P172 L1-L25; P173 L5-L10, P173 L24 to P174 L1, P253 L15-L21 to P254 L2, P294 L24 to P295 L2].

26.    [Head Shots].  As a further basis for his claims, Mason alleges that players would hit him in the head by throwing footballs at him.  Coach Nall never saw Mason get hit in the head with a football with his helmet on or off and had no advanced knowledge that it might happen. [Complaint, Doc. 96 at ¶ 24; Mason Depo at P399 L9 to P400 L2; Nall Depo at P174 L24 to P175 L14; P254 L10-L14].

27.    [The "Wall Drill"].  As a further basis for his claims, Mason alleges and contends that he was required to participate in a football drill known as the "Wall Drill." [Complaint at ¶s 43-44].   Coach Nall never ran the Wall Drill and was not in a position to see as it was a defense drill, a drill he was not part of during practices. [Nall Depo at P130 L8-19].

28.    [The "Okie Drill"].  As a further basis for his claims, Mason alleges that at his first practice, he was lined up in 8 consecutive matches against bigger and stronger

players where he had to push them out of a circle. Mason admits that he does not know which coach singled him out for those matchups but believes it was a combination of upperclassmen wanting Mason to keep going and some of it was Coach Nall and Coach Myers. Mason did not report any injuries due to this drill. [Mason Depo at P182 L8-L19; P388 L11-L24; P368 L7-L15].

29.     [The "Ring"]. As another basis for his claims, Mason alleges and contends that he was "forced" to participate in locker room fighting, dubbed by the players as the "Ring." [Complaint at ¶s 47].

30.     Coach Nall never "forced" Mason to participate in the Ring. [Mason Depo at P354 L2-L7].

31.     Instead, as Mason initially describes it, he had a choice as to whether to participate in the Ring:

Q:     [By Mr. Leonoudakis]  Did you feel like you had a choice whether or not to go to The Ring when seniors told you to get in?

A:     *At first I did and then I realized I didn't, I did not.* Because they'd press me and press me and if I didn't do it then I'd just get more of that, you know, rich little kid doesn't want to fight, what a – what a pussy, stuff like that and I just – they'd be like, wait till tomorrow, we'll toughen you up tomorrow, you'll -- we'll make you want to fight tomorrow and stuff like that. So --.

[Mason Depo at P418 L25 to P419 L9, emphasis added].

32.     Mason then described how the Ring was set *up by the players*:

"….because usually when I was in The Ring and the fighting and *they'd* put me in there it would be -- everyone would be gathered around *they'd* make a show of it where *they're* like -- you know, *they'd be  pushing me in there, Mason, get in there.*"

[Mason Depo at P256 L2-L11, emphasis added]. Those "pushing Mason" were other football players calling him out to wrestle in the Ring or just calling him out to try and match someone to wrestle or fight. As Mason put it: "It wouldn't always be someone saying I'm wrestling Mason after practice. It would sometimes be, he, who's going to – who's going to wrestle Mason. You know, sometimes people would appoint other people to wrestle me, they wouldn't themselves ask to wrestle me." [Mason Depo at P353 L5 to P354 L1].

33. The Ring happened during Mason's freshman and sophomore years in the locker but not in Mason's junior or senior years because Mason *chose not to participate*. If there was a Ring his junior or senior year Mason "never participated in it, *obviously*. [He] felt [he] was too old for that, *too grown for that and would step away*." [Mason Depo at P418 L14-24, emphasis added].

34. Mason was a straight "A" student throughout high School, was one of the co-valedictorians for his graduating class and took college classes while in high school. Mason has continued his academic success in college, having all "A's" and just one "B" through his sophomore year at Oklahoma State University [Mason Depo at P12 L2-L24; P19 L17 to P20 L3, P26 L7-L21].

35. During his high school years Mason was on student council, was in both the National and Oklahoma Honor Societies, member of FCA, on state championship teams, on AAU basketball teams during high school. Mason had a steady girlfriend his senior year in high school and the two continue to date while Mason attends OSU. [Mason Depo at

11

P13 L13-16, P14 L14-16, P15 L3-6, P20 L6-19, P31 L11 to P32 L4, P32 L21 to P33 L2, P33 L18 to P34 L17].

36.    Mason is active at OSU having joined fraternity in 2021 where he attends parties, and outside of the fraternity is involved in the marketing club, the sports management club, intramural sports and recently work as a project manager for ONG. [Mason Depo at P27 L23 to P28 L4, P19 L22-23, P23 L12-16, P24 L20-22, P25 L15-21, P28 L5-13].

37.    Mason never saw any mental health professionals while attending Kingfisher High School.  [Mason Depo at P298 L13-L17].

38.    Other than three mental health professional expert witnesses hired after this lawsuit was filed to testify on his behalf in this case, Mason has not, since attending OSU, seen a therapist but has visited with a minister on campus about his faith, being the Chaplin for his fraternity, college life and Kingfisher events. [Mason Depo at P297 L25 to P298 L12].

39.    Mason had a primary care doctor during his high school years in Kingfisher, a Dr. S.H. out of Hennessey, Oklahoma.  Mason never went to see Dr. S.H. during his high school years for any mental health issues, and Dr. S.H. never prescribed Mason any kinds of medications for any mental health issues during Mason's high school years. [Mason Depo at P383 L17 to P384 L9].

40.    Mason has not received or taken any medications to treat any mental health issues, nor has any professional suggested he take such medicines.  [Mason Depo at P301 L3-L315].

## LEGAL ARGUMENTS AND AUTHORITIES

**PROPOSITION 1: COACH NALL DID NOT AFFIRMATIVELY, KNOWINGLY OR IN RECKLESS DISREGARD OF A KNOWN RISK CREATE AN IMMEDIATE DANGER TO MASON, NOR WAS COACH NALL'S CONDUCT UNDER THE CIRCUMSTANCES CONSCIOUS SHOCKING AND THEREFORE MASON'S STATE CREATED DANGER-SUBSTANTIVE DUE PROCESS CLAIM FAILS AS A MATTER OF LAW**

A. **Section 1983 Individual Liability Requirements and Acting Under Color of Law**

Mason sues Coach Nall under 42 U.S.C. § 1983 for a "substantive due process" violation under the Constitution's Fourteenth Amendment for failing to protect him from abuse he claims he suffered as a football player. [Complaint at ¶s 132-145]. Yet, as a high school teacher and coach, Nall may only be held liable under § 1983 for their own acts taken under color of law—not the acts of third parties. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197. Section 1983 liability requires a nexus, a personal participation in the violation of a *constitutionally* protected rights, not vicarious liability. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Therefore, Coach Nall cannot be held to account individually for the individual acts of private student players or acts of other coaches simply because those coaches are on the same coaching staff. Nor can it be said that Coach Nall was acting under color of law if, as Mason claims, private *third-parties* were abusing him to the point of constitutional violations. Mere acquiescence in or approval of private actor conduct is not conduct rising to the level of acting under color of law and therefore attributable to the State. *Blum v. Yaretsky*, 457 U.S. 991, 1004-05 (1982)("Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives); *Darr v. Town of*

13

*Telluride,* 495 F.3d 1243, 1256 (10th Cir. 2007)(under color of law deprivation same as state action requirement). Since Nall did not affirmatively violate Mason's constitutional rights the Court should find that he was not acting under color of law if liability is premised on the conduct of private third parties.

B. **Mason Cannot Satisfy the Six Part Test Needed to Establish a "State Created Danger" Individual Liability Claim Against Coach Nall**

Mason sues Coach Nall under 42 U.S.C. § 1983 for a "substantive due process" violation under the Constitution's Fourteenth Amendment for failing to protect him as a player from sexual, verbal and mental abuse perpetrated by third parties. [Complaint at ¶s 129-145]. Yet, school district employees, like Coach Nall in this case, *are not liable* on a Substantive Due Process claim via the Fourteenth Amendment/Section 1983 for failing "to protect an individual against *private* violence.'" *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 195-197 (1989). Here the violence Mason sues over is alleged to include a spontaneous, random sexual assault by private actors, individual football players, along with beatings in the showers from other players. Coach Nall neither knew about nor participated in these acts of violence. Therefore, absent an exception to the *DeShaney* rule, Coach Nall cannot be held liable for the violence and abuse inflicted on Mason by private actors.

The law is clear that injury arising from the violence of private parties is actionable against state officials but only if the state official *affirmatively* created the danger that causes the plaintiff injury (the "State Created Danger" doctrine). *DeShaney, supra,* 489 U.S. at 195. To prevent every claimed injury from rising to the level of being a

14

constitutional tort, liability can be found in only the most exceptional cases. *Ruiz v. McDonnell,* 299 F.3d 1173, 1182-83 (10th Cir. 2002)(citations omitted). The Tenth Circuit has imposed rigorous legal standards for this kind of claim. Specifically, Mason must prove that: "(1) [Coach Nall] created the danger or increased [Mason's] vulnerability to it in some way; (2) [Mason] was a member of a limited and specifically definable group;[1] (3) [Coach Nall's] conduct put [Mason] at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) [Coach Nall] acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking." *Currier v. Doran,* 242 F.3d 905, 918 (10th Cir. 2001).

Importantly, mere negligence can never give rise to a substantive due process claim. *Davidson v. Cannon,* 474 U.S. 344, 348 (1986); *Ruiz, supra,* 299 F.3d at 1184. Additionally, and more important for Coach Nall's motion, Mason cannot rely on inaction or "nonfeasance" to state a claim, as it is, by definition, not affirmative conduct required to find the State created a danger. *Sutton v. Utah State School for Deaf and Blind,* 173 F.3d 1226, 1238 n.13 (citations omitted). It must be shown that Coach Nall acted intentionally or recklessly in creating the dangers Mason sues over. This Mason cannot do. As explained next, the undisputed facts reveal that Mason's State Created Danger claim fails as a matter of law.

**C. Coach Nall Was Not Aware of any Dangers to Mason, Did Not Affirmative Place Mason in Obvious, Known Dangers, Increase His Vulnerability to Them or Act with Deliberate Indifference or Reckless Disregard and Therefore is Not Liable on a State Created Danger Claim**

---

[1]As to element number 2, it is unclear what definable group Mason contends he was a member of, aside perhaps from a claim that he was a student and a football player which are neither limited nor specific. Without belaboring that point, the thrust of Coach Nall's motion focuses on the remaining five elements.

The following review of the attacks and violence that Mason sues over, and Coach Nall's involvement in those episodes, or more precisely the lack of involvement, show that Coach Nall neither created nor recklessly subjected Mason to known dangers in conscious disregard of Mason's safety and wellbeing.

*Sexual Assault-Tea-Bagging:*

The undisputed facts show that a potential Tea-bagging of Mason was neither obvious nor a known danger to Coach Nall ahead of it happening. It was not a danger he knew of, took affirmative steps to create or increase the likelihood of it occurring. Ahead of the assault, Mason himself never went to Coach Nall at any point with a concern about his personal safety or welfare. [UDF 13-15]. Further, Mason admits that the sexual assault sprang for a spontaneous, "very random" attack when four players grabbed him and held him down while a fifth player Tea-bagged him. Mason admits that he had never seen such an assault before and thankfully another sexual assault had never happened to Mason after. [UDF 14]. There was nothing ahead of the Tea-bagging that signaled that the random sexual assault was imminent or obvious to Coach Nall. Again, the risk was neither known to Coach Nall nor created by him.

Additionally, Coach Nall was *not* purposefully absent from the locker room at the time of the assault because he was deliberately indifferent and knew Mason would be harmed. [UDF 15]. Instead, he was not there for legitimate reasons, namely his teaching schedule prevented him from being in the locker room at the start of practice when players were changing and getting ready to head to the practice field. Post-practices, Nall's

coaching duties tied to his role as offensive coordinator put him in the coach's office so he could set up film studies. Those coaching duties, not deliberate indifference, took Coach Nall out of the locker room as the players were coming off the practice field to shower, change and head to film study. [UDF 3-5]. These work schedule factors, this schedule that kept Nall of the locker room are in play for the off-the-field incidents that Mason sues over.

In the end, as to the Tea-bagging, Mason cannot show that Coach Nall had *intent* to harm him or that Coach Nall was aware of a risk and *intended* to subject Mason to that risk regardless of the consequences, the degree of intent or scienter needed for a State Created Danger claim. *Christensen v. City of Tulsa,* 32 F.3d 1270, 1281 (10th Cir. 2003)(citations omitted).

*Towel Whippings-Beatings in the Shower and a Single Towel Pop:*

Mason asserts that he was repeatedly whipped with "weaponized" (shredded, knotted, balled) wet towels while naked in the team's locker room showers and that those whippings caused him significant bruising, bleedings, and physical and mental injuries, something far afield of players engaging in horseplay and "popping" each other with a dry towel in the locker room. Coach Nall never witnessed Mason being beaten in the showers after practice, not because of deliberate indifference but because coaches were not assigned to watch young men shower and because his coaching duties after each practice took him out of the locker room. [UDF 5]. Coach Nall was also not aware that players were wrapping balls in towels and whipping Mason about the head or in the genitals in the shower. Mason never reported the shower beatings to Coach Nall, school officials or the police and never showed Coach Nall his injuries or a photo of his injuries. In fact, Mason actually hid the

injuries from the shower beatings from his own parents. [UDF 16-18]. Again, no creation of a danger by Coach Nall and no intent to harm Mason.

*Tasers:*

Mason asserts that he was tased in the locker room by other players who brough a taser to school. Mason admits he was not tased in front of any coaches. Coach Nall never saw Mason get tased, was not aware of Mason getting tased and had no advanced knowledge or notice that a taser attack was imminent. [UDF 19-20]. Thus, Coach Nall did not create a taser danger as to Mason, did not knowingly and consciously let him be tased or recklessly disregard that danger knowing and intending to harm Mason.

*Pellet and Paintball Guns:*

Mason contends that he was grazed by a ricochet pellet when other football players brought a pellet into the locker room and spontaneously fired it off with no coaches in the immediate area. Mason has no evidence that Coach Nall knew about the pellet gun ahead of time, that one was being or going to be used the locker room and then made a conscious decision to look the other way. Coach Nall did not have advanced knowledge or not notice of the pellet gun. Therefore, like the "taser" incident, Coach Nall did not create a pellet gun danger as to Mason, did not knowingly and consciously let him walk in the line of any pellet gun fire or recklessly disregard that danger knowing and intending to harm Mason. [UDF 21].

As for paintball guns, Mason asserts that a football player attacked him while on a date with no adults around, an incident that in no way implicating any of the coaches. Another time he contends that clothes or shoes ruined in the locker room because they were

shot with a paintball gun, and another time was shot with a gun by a player who popped up out of a truck bed while coming onto the field. Coach Nall never saw anyone use a paintball gun on Mason and had no advance notice of a paintball gun attack on the field. Thus, it cannot be shown that the paintball gun attack was a known risk that Coach Nall created or consciously disregarded.

*Frozen Urine in a Helmet:*

The same analysis applies to urine in the helmet incident. This was not done in Coach Nall's presence, and he had no knowledge that it had happened until he heard players talking about it. He never saw urine melting down a player's face and Mason never reported the incident. Under these facts it cannot be said the Coach Nall created much less acted recklessly assuming the prevention of such a stunt itself rises to the level of a "danger" warranting protection under the Fourteenth Amendment.

*Other Claimed Incidents:*

Mason also alleges and contends that he was hit in the head with footballs and unexpectedly blindsided at practices. Coach Nall never witnessed any kind of "head-hunting" with footballs and had no advanced knowledge that it might happen. Coach Nall was only aware of occasional blindsiding in other position groups that he caught a glimpse out of the corner of his eye as it randomly happened across the field from where he was coaching. Coach Nall never saw Mason get blindsided and did not allow it to happen when he was coaching kids in his groups. Mason never reported it or indicated he had been injured. Nothing put Coach Nall on notice that Mason was in any kind of danger from that standpoint. The same is true for the Wall Drill and the Okie Drill that Mason questions.

19

Coach Wall never ran the Wall Drill in his position group with the lineman that he worked with and therefore was not put on notice of any issues, or even if Mason participated in that drill. As for the Okie Drill, Mason contends that he had to go up against bigger and stronger players in consecutive drills. While the drill might have been exhaustive, it simulated real game challenges and did not pose serious and immediate risk of danger and therefore, as to all of these events, is not actionable. [UDF 26-28].

In the end, the undisputed facts show that Coach Nall did not intentionally, recklessly or consciously decide that Mason should be subjected to an assault, knew it would happen and then let it happen. [UDF 13-28]. Coach Nall was not aware of a known or obvious risk to Mason that it was so great that serious harm was not only in the works but guaranteed. He did not act in conscious disregard and in light of unreasonable risk of the consequences. For these reasons Mason, as a matter of law, fails to establish elements 1, 3, 4 and 5 needed for a State Created Danger claim, each of which is a sufficient basis to grant Coach Nall summary judgment. As explained next, the final element of this claim, conduct shocking the conscience, is also lacking.

D. **The Case, and Coach Nall's Personal Interactions with Mason, Do Not Shock the Conscious Entitling Coach Nall to Summary Judgment**

The sixth element needed for a State Created Danger claim is that the official's conduct in question and circumstances of the case shock the Court's conscience. *County of Sacramento v. Lewis*, 523 U.S. 833, 846-50 (1998). The "shock the conscience" standard is extremely high. Negligent acts will never suffice. *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019). To meet this threshold, Mason must do more than merely say that Coach

Nall stood by or even intended to cause injury. "Even most intentionally inflicted injuries caused by misuse of government authority will not meet this standard." *Koessel v. Sublette Cnty. Sheriff's Dep't.*, 717 F.3d 736, 750. *Abeyta By and Through Martinez v. Chama Valley Independent School District No. 19*, 77 F.3d 1253, 1256-58 (10th Cir. 1996). Instead, to prevail a plaintiff must show a "degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking," something akin to state actor abusing authority to inflict violence on and oppress the plaintiff so that ordinary torts do not rise to the level of substantive due process violations. *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). As the gatekeeper, the "shock the conscience" question is for this Court. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) and Mason does not clear this legal hurdle.

State Created Danger cases typically require a finding of such physical abuse to meet the "shock the conscious" standard. See e.g., *L.H. v. Pittson Area Sch. Dist.*, 666 Fed. App'x 213, 217 (3d Cir. 2016). It is undisputed and Mason admits that Coach Nall never physically harmed or physically abused him. [UDF 7-8]. Using the shock the conscious framework, this Court must find that any cussing or vulgarities aimed at player Mason by Coach Nall solely during football practices and uttered in relation to football skills and practice do not invoke a need for constitutional protection as it is not conscious shocking conduct. The Tenth Circuit has held as much in *Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253 (10th Cir. 1996). In *Abeyta,* the Tenth Circuit concluded a teacher, who labeled a 12 year old girl a prostitute in front of the class and then repeatedly called her a prostitute for another six weeks, did not engage in conscious

shocking conduct, even if the teacher demeaned the child due to "indifference or deliberate intent to cause psychological harm...." As the Tenth Circuit held, "[e]ven extreme verbal abuse typically is insufficient to establish a constitutional deprivation." 77 F.3d at 1258 (internal citation omitted). Since the teacher's conduct was not conscious shocking, did not amount to "torture," the Tenth Circuit concluded that no substantive due process violation occurred. *Id.* at 757-758. The same result is called for here. Regardless of intent and regardless of degree, any vulgarity from Coach Nall toward Mason cannot, as a matter of law, be found to have been a substantive due process violation.

The Court should make the same finding regarding the "Ring" incidents. Although Coach Nall knew about the Ring, he *did not create it and never forced Mason to participate*. Instead, as Mason himself admits, he knew he could walk away, voluntarily participated in it and then eventually did walk away from it. [UDF 29-34]. While Mason may argue it was negligent for Coach Nall to not intercede, which is not admitted, a failure to act is neither "acting under of color of law, nor actionable on a State Created Danger theory. Under the totality of those circumstances the Court can find that the required element of shocking to the conscious is missing. The same is true of each of the other incidents that Mason sues over as discussed in Proposition 1(C).

When the proper focus is applied, when the Court analyzes *Coach Nall's conduct*, independently and in isolation of any other person's conduct, it is clear that his interactions with Mason do not shock the conscious. Again, while Mason may fault Coach Nall for not acting, mere negligence, no matter the degree, including a failure to act, simply cannot support a State Created Danger Claim. In totality because the undisputed facts show that

Coach Nall's conduct was not conscious shocking, summary judgment should be entered in his favor.

**PROPOSITION 2: COACH NALL DID NOT INTENTIONALLY DISCRIMINATE AGAINST MASON ON THE BASIS OF SEX, NOR WAS HE DELIBERATELY INDIFFERENT TO MASON'S EQUAL PROTECTION RIGHTS AND IS THEREFORE ENTITLED TO SUMMARY JUDGMENT**

As noted, the thrust of Mason's Section 1983 claim against Coach Nall really centers on the State Created Danger doctrine. Yet, there is a passing reference in the Complaint to Mason's rights secured as a matter of "Equal Protection" under the 14th Amendment and that Coach Nall acted with deliberate indifference in allowing Mason to be abused. [Complaint at ¶s 135 & 138]. A government official who is deliberately indifferent to known *sexual* harassment may be held liable under Section 1983. *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1250 (10th Cir. 1999). There is no evidence that Coach Nall's actions were undertaken with deliberate *intent* to discriminate against Mason on the *basis of sex* and therefore he is entitled to summary judgment on Mason's Equal Protection claim on this basis alone.

Even if this legal defect is ignored, Coach Nall did not act with reckless indifference. Reckless or callous indifference only comes about if the defendant acts "in the face of a perceived risk that [his/her] actions will violate federal law." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999). Negligence, no matter the degree of that negligence, can never constitute deliberate indifference. *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993). A government official's actions that are "inept," "erroneous," "ineffective" or constitute a "misreading" of the situation, even if that mistake leads to a tragic end, do not

amount to deliberate indifference. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

The discussion set out above in subsections 1B and 1C, discussions detailing how and why Coach Nall did not act in reckless and conscious disregard of a dangerous risk, are incorporated here and justify summary judgment for Coach Nall on any Section 1983 Equal Protection claim.

## PROPOSITION 3: SINCE COACH NALL DID NOT VIOLATE MASON'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS AND THEREFORE HE IS QUALIFIEDLY IMMUNE FROM SUIT

Coach Nall is sued individually for money damages under 42 U.S.C. § 1983. As such, based on the doctrine of qualified immunity, Coach Nall is exempt from liability on claims arising from the performance of his duties. *Pahls v. Thomas*, 718 F.3d 1210, 1277 (10th Cir. 2013). Under qualified immunity Coach Nall is *presumed immune* from suit. *A.M. v. Holmes,* 830 F.3d 1123, 1134 (10th Cir. 2016). Qualified immunity arises in all but the "most exceptional" of cases. *Tonkovich v. Kansas Board of Regents,* 159 F3d 514, 516 (10th Cir. 1998). This immunity blocks Coach Nall from having to stand trial.  Qualified immunity, as a question for this Court, gives ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law. *Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct 532, 537, 116 L.Ed.2d 589 (1991).

The immunity shield cannot be pierced unless Mason carries what the Tenth Circuit describes as a "heavy" two-part burden. *Brooks v. Gaenzle,* 614 F.3d 1213, 1219 (10th Cir. 2010). More specifically, to get around qualified immunity, Mason must show that Coach Nall violated Mason's constitutional rights *and* that those rights were clearly established at

the time the questioned conduct was undertaken. *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018); *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999); *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

If no constitutional right has been violated, then no further inquiry is required and Coach Nall must be dismissed immediately from the case. *Siegert v. Gilley*, 500 U.S. 226, 231-33, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)(officer entitled to qualified immunity if their conduct did not violate the law). As outlined in the legal arguments in Propositions 1 and 2, arguments incorporated here, Coach Nall did not violate Mason's constitutional due process or equal protection rights and therefore is entitled to qualified immunity on that basis.

Independently and alternatively, as detailed next, the law was not so clearly established that it let coaches like Coach Nall know that they were violating Mason's federally protected rights while Mason attended high school between 2017 and 2021. If the law was not clearly established, qualified immunity attaches, and the individual official should be dismissed. *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001).

The law is "clearly established" when there is a Supreme Court or Tenth Circuit case on point, or the clearly established weight of authority from other courts must have found the law to be as Mason presents. *Brown v Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). The right must be shown to exist in a "particularized" and "relevant sense" to the point that the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Further, to show a "clearly established" right, Mason "must do more than

25

identify a clearly established legal test and then allege that the defendant has violated it." Rather, Mason must demonstrate "a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990). In other words, Mason must show that Coach Nall's conduct was unlawful in the situations confronting Coach Nall. *Saucier, supra,* 533 U.S. at 200-202. This Mason cannot do.

Under the particularized facts of this case, a case where there is no physical assault, no sexual assault by the defendant coach of his player, where the allegations are about football drills and that the plaintiff player was cussed at or called demeaning names, that such conduct in 2017 to August of 2020, was illegal and a substantive due process violation. Counsel for Nall can no cases holding as much. In fact, Tenth Circuit case law suggests the contrary.

For example, the Tenth Circuit has ruled that actual physical contact alleged to be malicious and abusive, physical abuse between a teacher and a student does give rise to a state created danger claim. See *Muskrat v. Deer Creek Public Schools*, 715 F.3d 779 (10th Cir. 2012). In *Muskrat* there were allegations of incidents of *actual physical abuse* and a punitive use of an isolation room with a special needs child. The student's parents sued, among others, the "abusive" teacher and the district for multiple claims, including a State Created Danger claim. The Tenth Circuit ruled that the teacher's physical abuse and traumatizing use of the time out room did not violate the child's substantive due process rights. The Tenth Circuit found that conduct including an unprovoked "pop" to the child's

face, a slap on the arm, and the use of the timeout room as a punishment was not conscience shocking.

If actual abuse between special needs student and their teacher does not cross the line for purposes of a state created danger claim, then it cannot be rationally argued that it was clearly established law in 2017-2020 that a football coach's *non-physical* vulgarities and profanities aimed at a student player and private third-party actions in football drills created a danger actionable as a substantive due process violation. Therefore, Coach Nall is qualifiedly immune from suit.

Having disposed of Mason's federal claims, Coach Nall now addresses Mason's state law claims.

## PROPOSITION NO. 4:   MECKLENBURG'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW

Under Oklahoma law an intentional infliction of emotional distress ("IIED") claim first and foremost requires a showing of intentional outrageous conduct going beyond the bounds of what a normal society would find acceptable. Coach Nall's coaching interactions with Mason were neither extreme, outrageous, and beyond the bounds of what a reasonable person could be expected to endure, nor did they create severe, extreme emotional distress for Mason.  Accordingly, Mason fails to clear the "high bar" needed to prevail on an IIED claim.  *Cohlmia v. Ardent Health Servs., LLC*, 448 F. Supp. 2d 1253, 1272 (N.D. Okla. 2006)(citation omitted).

In *Gaylord Entertainment Co. v. Thompson*, 1998 OK 30, ¶s 45-47, 958 P.2d 128, 149 the Oklahoma Supreme Court, drawing on Section 46 of the Second Restatement of

Torts, held IIED requires a showing of conduct that is "extreme and outrageous," conduct that "beyond all possible bounds of decency" and would be "regarded as utterly intolerable in a civilized community," coupled with a showing of *severe* emotional distress. *Computer Publications, Inc. v. Welton,* 2002 OK 50, ¶ 7, 49 P.3d 732, 735; *Miller v. Miller,* 1998 OK 24, ¶ 33, 956 P.2d 887, 900-011 (every invasion of emotional serenity or every anti-social act that may produce hurt feelings" not actionable); *Breeden v. League Services Corp.,* 1978 OK 27, 575 P.2d 1374; *Haynes v. South Community Hosp. Management, Inc.,* 1990 OK CIV APP 40, ¶13, 793 P.2d 303. As Section 46 of the Second Restatement of Torts teaches: "The rough edges of our society are still in need of a good deal of filing down, and in the meantime, plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." Thus, only extraordinary transgressions of the bounds of civility are actionable. *Williams v. Lee Way Motor Freight, Inc.,* 1984 OK 64, ¶5, 688 P.2d 1294 (citation and footnote omitted). This admonition is particularly adept in the football context.

The IIED legal standard is *not* measured from Mason's standpoint, a subjective viewpoint. *Breeden,* 1978 OK 27 at n. 6. Instead, it is measured by whether a "reasonable person" could not be expected to endure the conduct said to be extreme and outrageous *and in the context of where the acts take place* and not in a "sterile" setting. *Eddy v. Brown,* 1986 OK 3, 715 P.2d 74, 77 (citation omitted). The Tenth Circuit has also looked at the same factors in rejecting an IIED claims under Oklahoma law. See *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1387-8 (10th Cir. 1991) (applying Oklahoma law);

28

*Zeran v. Diamond Broad., Inc.*, 203 F.3d 714, 720-21 (10th Cir. 2000)(applying Oklahoma law).

More importantly, as a matter of law, *IIED liability cannot extend to "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." Hurt feelings do not give rise to an IIED claim. The conduct must be "atrocious.* See *Breeden, supra,* 1978 OK 27 at ¶s 7-8, 15. In other words, merely cussing at or around another person or insulting another cannot give rise to an IIED claim, especially in the football arena between coach and player. *Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387-8 (10th Cir. 1991) (applying Oklahoma law); *Zeran v. Diamond Broad., Inc.*, 203 F.3d 714, 720-21 (10th Cir. 2000). If the case were otherwise the courts would be clogged with lawsuits from all the people who are on the receiving end of every cuss word or vulgarity uttered.

As the "gatekeeper" under *Thompson, supra,* this Court should find as a matter of law that Coach Nall conduct is not "beyond all possible bounds of decency" or "utterly intolerable in a civilized community." It is also for this Court to determine in the first instance if Coach Nall's claimed actionable conduct, *not the conduct of others*, caused severe emotional distress. *Daemi, supra* and *Zeran, supra.*

Here this Court can find as a matter of law that Coach Nall simply did not engage in the extreme and outrageous conduct needed for an IIED claim to proceed. Coach Nall did not physically or sexually abuse Mason. Instead, as Mason testified, his main complaint against Coach Nall was his *vulgarity* [UDF 9-12] and that vulgarity was not limited to just Mason, it was "across the board" with all players, not that it makes it acceptable. [UDF 9]. Yet, while calling a football player on in the practice arena

inappropriate names, like "pussy," or "bitch" or "little bitch boy," or names, or cussing and using the F-word in a football context may be insulting, indignant and result in hurt feelings, such inappropriate name calling and language is not actionable as an IIED claim.

Such vulgarities, such indignities, especially in the context of a football coaching environment, do not go beyond all possible bounds of decency" and are not so outrageous that no reasonable person could be expected to endure a cussing out. This is especially true when done in the context of football related drills and practices and given the fact that Mason has used words the very same words, like pussy and has himself dropped the F-bomb. [UDF 10 & 12]. While unprofessional, Coach Nall's profanity and vulgarity cannot, as a matter of law, rise to the level of an intentional infliction of emotional distress. See *Daemi, supra,* 931 F.2d at 1387-8 (10th Cir. 1991). Further, as outlined above, since Nall's other dealings and interactions with Mason do not "shock the conscious," the Court can likewise conclude that they are not "outrageous" and actionable as an IIED claim.

Mason's IIED claim fails on a second and independent level: Mason has not suffered the level of extreme and severe emotional distress required by law to state a viable claim. Again, as the "gatekeeper," this Court makes the initial assessment to see if the claim passes legal muster, and the level of distress needed to clear this legal hurdle is "severely restricted." *Matlock v. Texas Life Ins. Co.,* 404 F. Supp. 2d 1307, 1314 (W.D. Okla. 2005). The claimed emotional distress must be extreme, utterly intolerable in a civilized society and so severe that no reasonable person could endure it. *Cohlmia v. Ardent Health Servs., LLC,* 448 F. Supp. 2d 1253, 1272 (N.D. Okla. 2006). The undisputed evidence shows that Mason did not suffer life altering extreme distress.

Mason excelled in high school, college and life. Mason was a straight A student throughout high school. He was a co-valedictorian as a senior. He was active outside of football, on student council, in FCA, National Honor Society, ran track, played AAU basketball and took college course while in high school. He had a steady girlfriend in his senior year and the two continue to date as Mason goes into his junior year of college at OSU. At OSU Mason has continued the excel academically, having all A's and just one B, and is socially active on campus, is a member of fraternity, various clubs and enjoys intermural sports. Mason was just recently working as a project manager for ONG. [UDF 34-41].

Neither Mason nor his parents sought out any mental health professionals while Mason was in high school. He never went to or sought his primary care doctor for mental health treatment or medication. In fact, other than three mental health experts hired for him after he sued, Mason never sought out mental health doctors after graduating from high school. Mason has never taken any kind of medication for any mental health issues and no doctor has suggested otherwise. [UDF 37-41].

Mason has not endured the extreme, utterly intolerable and severe distress, mental health conditions that no reasonable person could be expected to endure. Accordingly, for the reasons stated and in line with the Tenth Circuit cases of *Daemi* and *Zeran* and the Oklahoma decision outlined above, this Court should summarily dismiss Mason's IIED claim against Coach Nall.

**PROPOSITION 5: COACH NALL ACTING IN GOOD FAITH WITHIN THE COURSE AND SCOPE OF HIS EMPLOYMENT CANNOT BE LIABLE FOR NEGLIGENCE UNDER OKLAHOMA LAW**

31

Claims for negligence require the plaintiff to show a breach of legal duty that directly caused injury. *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶12, 160 P.3d 959, 964. Mason sues Coach Nall *individually* for negligence but then claims as a *school employee* Coach Nall had a duty to protect him as a *football player* KPS high school and that Nall as school employee/coach and failing to do so enabled, among other things, a claimed random criminal sexual assault by players in the football locker room, physical whippings with towels in the shower by certain players and other physical and verbal abuse perpetrated by players, along with claims of verbal abuse and the use of vulgarities. As Mason puts it, Coach Nall and other *coaches* failed to provide him with a "safe educational environment." [See generally Nall's Undisputed Facts; Complaint at ¶s 113-114].

Yet, in his *individual capacity,* Nall had no such "legal duty" under state law to protect Mason. There was no *special legal relationship* between Mason and Nall in their *individual* capacities, something beyond coach/athlete, that somehow imposed a higher duty of care. Under Oklahoma law then, Coach Nall individually *did not* have a duty of care to prevent an intentional, criminal attack on Mason. See *J.S. v. Harris*, 2009 OK CIV APP 92, 227 P.3d 1089, 1092. Coach Nall cannot personally be liable for negligence. Stated differently, since the duty Mason says Nall breached can only spring from Nall' duties as a school employee/coach, and not as an individual, he cannot be sued individually for negligence. See *Cooper v. Millwood Indep. School Dist. No. 37*, 1994 OK CIV APP 114, ¶ 16, 887 P.2d 1370, 1375.

32

This is made clear in Oklahoma's Governmental Tort Claims Act, specifically Okla. Stat. tit. 51, 163(C), which provides that **in no event** can a school employee acting within the course and scope of his employment in good faith be named individually as a defendant on a negligence claim. Oklahoma courts agree. See *Speight v. Presley*, 2008 OK 99 at ¶ 11, 20, 203 P.2d 173. The remedy for negligence lies *solely* against the political subdivision for its employees' acts. Okla. Stat. tit. 51, § 153(A).

Judge Wyrick recently reached just such a conclusion in *Porter v. Ponca City Independent School District No 1-71*, No. Civ-21-612-PRW, 2022 WL 1444471 at *2-3 (W.D. Okla. May 6, 2022) (citations and footnotes omitted). Porter, a student at Ponca City, alleged he was sexually assaulted by upperclassmen as part of a basketball team hazing ritual. Porter also alleged that this hazing had occurred in a prior school year but had not been dealt with. Porter sued, among others, his basketball coach for negligence. 2022 WL 1444471 at *1. The coach's motion to dismiss was granted.

According to Judge Wyrick, as a question of law, the failure to protect claim against the school employees sprang exclusively from their role and duties as employees of the school district.  Therefore, relying in part on the *Cooper* and the GTCA, Judge Wyrick ruled that the student's negligence claims against the coach and other school employees could not proceed, even in light of allegations that the employees had acted maliciously. A similar result in favor of Coach Nall is called for in this case.

As already explained in the discussion of Mason's State Created Danger claim, Coach Nall acted in good faith, without malice, within his scope of employment and therefore cannot be sued for negligence as a school employee. Coach Nall did not

deliberately or recklessly act in gross disregard of care that it constitutes willful, wanton or deliberate conduct taking it out of the sphere of "negligence."

## CONCLUSION

For all of the reasons advanced, summary judgment should be granted to Defendant Micah Nall on all claims leveled by Plaintiff Mason Mecklenburg.

**Respectfully submitted,**

*s/ Mark S. Rains*
Mark S. Rains, OBA No. 10935
ROSENSTEIN, FIST & RINGOLD
525 South Main, Suite 700
Tulsa, Oklahoma 74103
(918) 585-9211
(918) 583-5617 (facsimile)
mrains@rfrlaw.com
*Attorney for Defendant Micah Nall*

34

## CERTIFICATE OF DELIVERY

☒      I hereby certify that on August 29, 2023, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants, to:

Ross Leonoudakis
Nathan Hall
Brad Beckworth
Cameron Spradling
Attorneys for Plaintiff

Joe White
Kate White
Attorneys for Defendant Myers

-and-

John Priddy
Eric Janzen
Attorneys for the Defendant School District and
Defendants Patterson and Eaton

*s/Mark S. Rains*
**Mark S. Rains**

35